

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

William H. Rogers, Jr.,    Plaintiff

v.                          Civil Action NO. **3:26-CV-064**

Firehouse of America, LLC;

Firehouse Restaurant Group, LLC;

FRG, LLC,                  Defendants.

## COMPLAINT FOR DECLARATORY RELIEF AND CANCELLATION OF TRADEMARK REGISTRATIONS
(15 U.S.C. §§1055, 1119)

## <u>INTRODUCTION</u>

This action seeks declaratory relief and cancellation of trademark registrations under 15 U.S.C. § 1119 to determine ownership and enforceable rights in FIREHOUSE-formative marks, where Defendants' asserted ownership and entitlement are disputed and lack a valid chain of title.

Plaintiff William H. Rogers, Jr. created and documented the FIREHOUSE SUBS brand franchise concept in 1993 prior to the opening of the first Firehouse Subs restaurant in October 1994.   Plaintiff memorialized the brand franchise concept in the 1993 Firehouse Subs Business Booklet, which described a replicable franchise-store concept including the FIREHOUSE SUBS name, firefighter-themed décor, brand identity, store layout, design elements, marketing imagery, and first offered FIREHOUSE SUBS Brand Franchising.  (<u>See Exhibit A</u>.)

Defendants later filed trademark applications with the USPTO claiming exclusive ownership of FIREHOUSE-formative marks and submitting sworn declarations asserting they were the rightful owners of the marks, there was no other mark confusingly similar and that they were entitled to registration.   Plaintiff alleges these declarations are disputed as inconsistent with Plaintiff's prior rights and the factual record.

## JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338. This Court has authority under 15 U.S.C. § 1119. This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201.

This Court has personal jurisdiction over Defendant Firehouse of America, LLC ("FOA") because FOA conducts substantial and continuous business within the State of Georgia, including licensing, supporting, and deriving revenue from FIREHOUSE SUBS franchise locations operating within this District. Plaintiff's claims arise directly from these Georgia-based activities.

Defendants Firehouse Restaurant Group, LLC ("FRG") and FRG, LLC are necessary and proper parties under 15 U.S.C. § 1119 because they claim ownership, control, or licensing rights in the FIREHOUSE-formative trademark registrations at issue.

FRG, LLC has purposefully availed itself of the privileges of conducting business in Georgia through the licensing and control of FIREHOUSE marks used in franchise operations within this State and derives substantial economic benefit from such activities.

Corporate records confirm that Defendants share a common principal business address, a common registered agent for service of process in Georgia, and overlapping management, demonstrating coordinated control over the FIREHOUSE trademark portfolio. (See Exhibit G.)

Public filings further reflect that FRG and FRG, LLC are identified interchangeably across trademark and corporate records and, upon information and belief, represent a continuing business enterprise responsible for the ownership, licensing, and commercialization of the FIREHOUSE marks.

Defendants operate in an integrated manner through a unified franchise system and are active participants in the authorization, control, and monetization of the FIREHOUSE marks, including their use within the State of Georgia. These activities constitute substantial, continuous, and revenue-generating contacts with this District.

Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District. Plaintiff resides in this District and has suffered harm here as a result of Defendants' conduct.

This action seeks relief under 15 U.S.C. § 1119 concerning the validity of trademark registrations and ongoing commercial use within this District. To the extent Defendants or their predecessors used the mark, such use occurred with Plaintiff's knowledge and authorization, consistent with 15 U.S.C. § 1055.

Plaintiff is not a party to any franchise agreement with Defendants and is not bound by any forum-selection clause contained in Defendants' franchise documents. Plaintiff's claims arise independently and are based on Plaintiff's senior prior use, authorship, and ownership of the FIREHOUSE mark.

Because Defendants' FIREHOUSE-formative registrations were prosecuted, maintained, assigned, and leveraged as a unified trademark portfolio based on a common representation of ownership, a determination that such representation is invalid or disputed would render the portfolio subject to cancellation under 15 U.S.C. § 1119.

ADDITIONAL VENUE DETAILS

Public corporate filings confirm that Defendants are registered to conduct business in Georgia as foreign entities, each maintaining the same principal business address and the same registered agent for service of process. (See Exhibit G.) These records demonstrate purposeful availment of this forum.

Defendants' activities within Georgia are continuous and systematic and arise from the licensing, enforcement, and commercialization of the FIREHOUSE marks through a coordinated franchise system operating within this District.

This District is the most appropriate forum for resolution of this dispute, and transfer would merely shift inconvenience without serving the interests of justice.

## PARTIES

Plaintiff William Harris Rogers, Jr. ("Plaintiff") is an individual residing in Senoia, Georgia, and is the creator of the FIREHOUSE brand franchise concept and the original source of the FIREHOUSE mark as first used in commerce.

Defendant Firehouse of America, LLC ("FOA") is a limited liability company organized under the laws of the State of Florida, with its principal place of business in Jacksonville, Florida. FOA operates, licenses, and supports FIREHOUSE SUBS franchise locations throughout the United States, including within the State of Georgia, and derives revenue from such operations.

Defendant Firehouse Restaurant Group, LLC ("FRG") is a limited liability company organized under the laws of the State of Florida, with its principal place of business in Jacksonville, Florida. FRG has prosecuted, obtained, and maintained FIREHOUSE-formative trademark registrations with the United States Patent and

Trademark Office and has been identified in public records as asserting ownership interests in such registrations.

Defendant FRG, LLC is a limited liability company organized under the laws of the State of Florida, with its principal place of business in Jacksonville, Florida. FRG, LLC is identified in Defendants' Franchise Disclosure Document as the parent, predecessor, and licensor of the FIREHOUSE-formative trademarks and as the entity through which ownership and control of such marks are exercised.

Upon information and belief, FRG exercises managerial and controlling authority with respect to FOA and the FIREHOUSE trademark portfolio, including the licensing, use, and commercial exploitation of the FIREHOUSE marks through FOA's franchise system.

For clarity, "FRG" refers to Firehouse Restaurant Group, LLC, and "FRG, LLC" refers to a Florida limited liability company identified in Defendants' disclosures as the owner and licensor of the FIREHOUSE-formative trademarks.

Although FRG and FRG, LLC are identified as separate legal entities in certain records, public filings trademark records reflect overlapping and, at times, interchangeable identification of these entities in connection with the ownership, licensing, and control of the FIREHOUSE trademark portfolio.  (See Exhibit G.)

Upon information and belief, FOA, FRG, and FRG, LLC share a common principal business address and overlapping executive leadership and operate in a coordinated and integrated manner with respect to the ownership, control, licensing, and monetization of the FIREHOUSE marks.

Defendants' records further reflect inconsistent identification of the entity asserting ownership of the FIREHOUSE-formative marks, including use of "FRG, LLC" in USPTO filings and "Firehouse Restaurant Group, LLC" in state corporate records, despite evidence that these names refer to a single continuing business enterprise responsible for the FIREHOUSE trademark portfolio.

## FACTUAL BACKGROUND

In 1993 Plaintiff created the FIREHOUSE SUBS brand franchise concept including the brand name, restaurant décor theme, design elements, marketing imagery, store layout concepts, and a replicable franchise store model.  Plaintiff documented this concept in the 1993 Firehouse Subs Business Booklet prior to the opening of the first Firehouse Subs restaurant.  (See Exhibit A. and Exhibit B.)

The first FIREHOUSE SUBS restaurant brand store opened in October 10th 1994 and incorporated design elements consistent with the concept documented in Plaintiff's earlier materials.   Firehouse Subs later expanded brand franchises into a national franchise system.

Plaintiff's evidentiary record demonstrates a continuous pattern of trademark filings, renewals, assignments, and security instruments relating to the FIREHOUSE mark dating back to approximately 1995, each premised upon the same underlying representation of ownership.

This pattern spans decades and includes dozens of trademark filings and related instruments submitted under penalty of law, reinforcing that the ownership representations at issue were not isolated, but systemic and repeated.

Under 15 U.S.C. §1055, use of a trademark by a related company inures to the benefit of the trademark owner and does not create independent ownership rights in the user.

Plaintiff is directly and personally affected by Defendants' trademark registrations because those registrations interfere with Plaintiff's ability to assert his prior common-law trademark rights in the FIREHOUSE mark.

The foregoing allegations are further supported by documentary evidence attached as Exhibits A through G.

## COMMON-LAW OWNERSHIP AND PRIORITY

Plaintiff is the originator of the FIREHOUSE SUBS brand franchise concept and the first party to create and document the FIREHOUSE mark in connection with a restaurant brand system.

Beginning in 1993, Plaintiff publicly promoted and documented the FIREHOUSE SUBS Brand Franchise concept through materials including the 1993 Firehouse Subs Business Booklet.   These materials associated the FIREHOUSE mark with a restaurant brand franchising system including distinctive firefighter décor themes, marketing imagery, and restaurant design elements.  (See Exhibit A.)

Under long-established principles of United States trademark law, ownership of a trademark arises from priority of use rather than from registration.   Plaintiff therefore possesses prior common-law trademark rights in the FIREHOUSE mark. Use of the mark by related parties operating Firehouse restaurants inured to the benefit of Plaintiff under 15 U.S.C. §1055.

## INFRINGEMENT OF PLAINTIFF'S COMMON-LAW RIGHTS

Defendants have used the FIREHOUSE mark in commerce in connection with restaurant services and franchising activities.

Such use is identical or confusingly similar to Plaintiff's prior common-law trademark rights in the FIREHOUSE mark.

Defendants' continued use of the mark has caused and continues to cause confusion regarding the origin and ownership of the FIREHOUSE brand and constitutes infringement of Plaintiff's common-law trademark rights.

## PATTERN OF REGISTRATION CONDUCT & OWNERSHIP ASSERTIONS

The history of the FIREHOUSE trademark registrations reflects a pattern of conduct in which Defendants sought to obtain and maintain federal trademark registrations through representations to the USPTO inconsistent with the factual record.

1993 – Creation and offering of the FIREHOUSE SUBS Brand Franchise Concept along with Brand Franchise marketing materials created by Plaintiff.

1994 – Opening of the first Firehouse Subs restaurant incorporating Plaintiff's documented brand franchise elements.

1995 – Trademark applications filed by Defendants asserting exclusive rights in the FIREHOUSE mark.

Accordingly, federal litigation 4:09-cv-00618-RBH produced evidence from which a jury could reasonably infer that Defendants' representations to the USPTO were inconsistent with the factual record when submitting the trademark application. (See Exhibit C.)

During resolution of that FRG litigation 4:09-cv-00618-RBH, the parties represented that the registration "FIREHOUSE" would not be renewed and would be administratively cancelled.  (See Exhibit E.)

2019 – Department of Commerce Office of Inspector General Investigation (Case No. 19-0529) indicating the "FIREHOUSE SUBS EST 1994" trademark application was resubmitted despite the existence of a pre-existing FIREHOUSE trademark registration and with knowledge of that earlier registration.  (See Exhibit D.)

-10-

Defendants further treated the FIREHOUSE trademark registrations as valuable corporate assets by pledging them as collateral in recorded intellectual-property security agreements with financial institutions.

**Defendants' Trademark Prosecution Conduct and Control:**

In addition to the foregoing, Defendants' trademark prosecution history reflects a pattern of revoking and appointing successive attorneys of record while executing certain filings through a corporate officer. USPTO records show that, notwithstanding the presence of designated counsel, filings were submitted by Defendants' principal, who also directed decisions regarding which applications to file.

Such submissions are made to the USPTO under certification obligations, including those set forth in 37 C.F.R. § 11.18(b)(2)(i), and are subject to federal statutory requirements governing the accuracy of statements presented to the government, including 18 U.S.C. § 1001.

## PRIOR FEDERAL FINDINGS AND SUBSEQUENT CONDUCT

In a prior 2011 federal litigation (e.g. 4:09-cv-00618-RBH), a jury found that Firehouse Restaurant Group, Inc. obtained a federal registration for the FIREHOUSE mark through fraud on the United States Patent and Trademark Office. The court transmitted that finding to the USPTO for notice.

Following that determination, the parties represented in connection with consent settlement proceedings that the subject FIREHOUSE registration would not be renewed and would be administratively canceled.   The USPTO, through the Office of the Solicitor, acknowledged that it did not oppose vacatur of the judgment provided that the FIREHOUSE registration would not be renewed and would be canceled.

These proceedings reflect that Defendants were on notice of both (i) the fraud determination concerning the FIREHOUSE registration and (ii) the expectation that the FIREHOUSE registration would be discontinued and not renewed.

Despite this, Defendants continued to prosecute, maintain, and commercially exploit FIREHOUSE-formative trademark registrations, including through licensing, assignments, and franchise operations, reinforcing Plaintiff's allegation that the portfolio has been maintained through a pattern of repeated and inconsistent representations concerning ownership and entitlement.

This sequence of events demonstrates that Defendants' continued assertion of exclusive rights in the FIREHOUSE mark occurred after notice of material defects in the underlying registration and in disregard of prior judicial and administrative proceedings, as well as consent-based settlement terms governing the disposition of the registration.

Defendants' subsequent conduct, despite this notice, reflects a conscious disregard of prior findings of fact and reinforces the inference that Defendants' ownership representations were inconsistent with the factual record.

## GOVERNMENT INVESTIGATION

In 2019, the United States Department of Commerce Office of Inspector General conducted an investigation concerning the Firehouse Restaurant Group trademark portfolio (Investigation Report No. 19-0529).  (See Exhibit D.)

An investigative record prepared by the Office of Inspector General states that the individual responsible for filing and maintaining Firehouse trademark applications resubmitted a trademark application despite the existence of a pre-existing registered trademark for "FIREHOUSE," and did so with knowledge of that earlier registration.

The Office of Inspector General's findings were presented to the USPTO, yet the agency declined to take corrective action with respect to the challenged registrations.

These findings are consistent with Plaintiff's allegation that Defendants made statements to the USPTO concerning ownership and entitlement that were inconsistent with the factual record regarding their entitlement to register the FIREHOUSE-formative marks.

-13-

This refusal, despite notice of irregularities and potential fraud, allowed the registrations to remain on the federal register and to be further used in commerce, assignments, and financial transactions, and to serve as the basis for refusals under Section 2(d) of the Lanham Act against other applicants asserting rights in the FIREHOUSE mark.

This continued reliance on registrations alleged to have been procured through statements concerning ownership and entitlement that were inconsistent with the factual record perpetuates harm to Plaintiff and undermines the integrity of the federal trademark register.

## REPRESENTATIONS TO THE USPTO CONCERNING OWNERSHIP AND ENTITLEMENT

Defendants submitted sworn declarations to the USPTO in connection with applications for FIREHOUSE-formative marks stating that Defendants were the owners of the marks and believed themselves entitled to registration.

Plaintiff alleges, upon information and belief, that these declarations are disputed as inconsistent with Plaintiff's senior prior rights and the factual record because Defendants were aware of Plaintiff's prior creation and documentation of the FIREHOUSE brand franchise concept and were also aware of pre-existing FIREHOUSE trademarks and related marks.

The USPTO relied upon these declarations in issuing trademark registrations. The declarations submitted to the USPTO were material because the USPTO relies on the applicant's sworn statements regarding ownership and entitlement to register when determining whether to issue a trademark registration.

These statements were made under penalty of law and were material to the USPTO's decision to issue the registrations.

Plaintiff expressly disclaims any standalone claim for fraud under 15 U.S.C. §1120, and does not invoke Rule 9(b).

The foregoing allegations are provided solely to demonstrate disputed representations concerning ownership, validity, and entitlement bearing on ownership, validity, and entitlement to registration, and to support cancellation under 15 U.S.C. §1119.


## TRADEMARK PORTFOLIO

The registrations at issue form part of a broader portfolio of FIREHOUSE-formative marks used by Defendants in franchise operations. Assignment records indicate that the marks have been transferred among corporate entities and treated as unified intellectual property assets. (See Exhibit F.)

Each of these registrations traces back to the same core representation made to the USPTO regarding entitlement to the FIREHOUSE mark. If that representation is

determined to be invalid or unsupported, each registration derived from that representation is void ab initio and subject to cancellation.

Defendants have treated the FIREHOUSE trademark portfolio as an integrated and unified set of intellectual property rights, such that defects in the foundational ownership representation necessarily affect each derivative registration.

Each of the FIREHOUSE-formative registrations identified herein derives from and depends upon a common asserted ownership of the FIREHOUSE mark. Because that ownership is disputed, the validity of the entire portfolio rises or falls with resolution of that foundational ownership issue.

This portfolio-level treatment, including the incorporation of such marks into assignment and collateralization security instruments, further reflects that Defendants' asserted ownership and entitlement is disputed and not confined to any single registration.

USPTO records further reflect repeated FRG registrations with entries stating, *"assignment of ownership not updated automatically,"* indicating irregularities in recorded ownership data within the FIREHOUSE trademark portfolio.

The cancellation of FIREHOUSE Registration No. 1,903,135 further demonstrates instability within Defendants' trademark portfolio.

FRG, LLC is identified in USPTO records and Defendants' own disclosures as the entity asserting ownership of the FIREHOUSE-formative registrations.

-16-

## STANDING VERSUS ENTITLEMENT TO RELIEF

Defendants may assert that they possess standing based on their commercial use of the FIREHOUSE mark. Plaintiff does not dispute that Defendants, as operators of a commercial enterprise, may satisfy the minimal requirements of Article III standing.

However, the existence of standing is distinct from the existence of enforceable rights.

Even where a party demonstrates a sufficient interest to appear before the Court, it must still establish a legally cognizable ownership interest in the mark in order to assert or defend trademark rights under the Lanham Act.

Here, Defendants' claimed ownership is premised upon trademark registrations that Plaintiff alleges were procured and maintained since 1995 based on disputed representations concerning ownership and entitlement to the United States Patent and Trademark Office. If those registrations are determined to be void ab initio, Defendants are stripped of any statutory presumption of ownership and cannot rely upon the Lanham Act to assert exclusive rights.

At most, Defendants could claim junior common-law use arising from their later commercial activities. Such use is subordinate to Plaintiff's prior rights and is insufficient to defeat Plaintiff's claims for declaratory relief and cancellation under 15 U.S.C. §1119.

Accordingly, while Defendants may have standing to appear, they lack entitlement to relief because they cannot establish lawful ownership, priority, or exclusive rights in the FIREHOUSE mark.

This distinction is critical: the issue before the Court is not whether Defendants may participate in the litigation, but whether they possess legally enforceable rights capable of overcoming Plaintiff's superior ownership claim. They do not.

## FINANCIAL COLLATERALIZATION OF THE TRADEMARK PORTFOLIO

Following the merger with RBI, Defendants treated the FIREHOUSE trademark registrations as a unified portfolio and pledged them as collateral in recorded USPTO security agreements, including Reel 007563 Frame 0239 and Reel 008699 Frame 0230. These filings reflect Defendants' use of the portfolio as a significant corporate asset in financing transactions. Because ownership and validity of these registrations are disputed, resolution of this action will determine whether the collateralized portfolio remains enforceable. (See Exhibit F.)

## COUNT I – DECLARATORY JUDGMENT (28 U.S.C. §2201)

An actual and justiciable controversy exists between Plaintiff and Defendants regarding the ownership, validity, and enforceability of the FIREHOUSE-formative trademarks.

Defendants claim ownership of the FIREHOUSE marks by virtue of federal trademark registrations and ongoing commercial use.

Plaintiff contends that he is the original creator and prior user of the FIREHOUSE mark dating back to 1993 and that Defendants' claimed ownership is invalid.

This controversy is real, immediate, and substantial, as evidenced by ongoing disputes between the parties, including proceedings before the Trademark Trial and Appeal Board.

Pursuant to 28 U.S.C. §2201, Plaintiff seeks a declaration that:

(a) Plaintiff possesses prior and superior common-law trademark rights in the FIREHOUSE mark;

(b) Defendants are not the lawful owners of the FIREHOUSE-formative marks; and

(c) Defendants' trademark registrations are invalid and unenforceable.


## COUNT 2.  CANCELLATION OF REGISTRATIONS (15 U.S.C. §1119)

This claim arises in connection with the actual controversy set forth in Count I.  An actual controversy exists regarding the validity of Defendants' FIREHOUSE trademark registrations.

Under 15 U.S.C. §1119 this Court has authority to determine the right to registration and to order cancellation of trademark registrations.

Plaintiff seeks a declaration that he possesses prior common-law trademark rights in the FIREHOUSE mark and requests cancellation of the FIREHOUSE-formative registrations identified below.

## ACTUAL CONTROVERSY

The parties are engaged in ongoing trademark disputes before the Trademark Trial and Appeal Board ("TTAB"), where Plaintiff has challenged Defendants' FIREHOUSE-formative applications. These proceedings confirm a real and substantial controversy regarding ownership and validity of the FIREHOUSE marks. See B&B Hardware, Inc. v. Hargis Industries, Inc., 575 U.S. 138 (2015).

The registrations at issue derive from a common representation of ownership submitted to the USPTO; if that foundational representation is invalid or unsupported, each resulting registration is subject to cancellation.

Following the FIREHOUSE SUBS acquisition, Defendants' successor-in-interest communicated with Plaintiff regarding his claims, confirming notice of Plaintiff's asserted rights and the existence of an active ownership dispute. (See Exhibit H.)

Defendants have continued to file additional FIREHOUSE-formative applications, including Serial No. 97519835, further evidencing their ongoing assertion of ownership and the continuing nature of this dispute.

This Court's authority under 15 U.S.C. § 1119 extends to the full FIREHOUSE trademark portfolio where registrations derive from a common and disputed representation of ownership.

## REGISTRATIONS SUBJECT TO CANCELLATION

Please see attached "FIREHOUSE-FORMATIVE REGISTRATIONS SUBJECT TO CANCELLATION" documentation herein.    The identified registrations therein depend on the validity of the first successful FIREHOUSE mark and are subject to cancellation if that ownership is invalid.

Because FRG, LLC is identified as the owner and licensor of the FIREHOUSE-formative trademarks, it is a necessary and proper party to this action for purposes of determining ownership and ordering cancellation under 15 U.S.C. §1119.

## VOID AB INITIO AND LICENSING COLLAPSE

Trademark registrations obtained based on invalid or unsupported ownership assertions may be declared void ab initio and confer no enforceable rights.   See In re Bose Corp., 580 F.3d 1240 (Fed. Cir. 2009); see also Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 873 (3d Cir. 1992) (recognizing the Court's authority under 15 U.S.C. §1119 to cancel registrations in the context of an otherwise properly instituted action).

Plaintiff alleges that Defendants procured and maintained FIREHOUSE-formative registrations based on disputed representations concerning ownership and entitlement to register. Where ownership is disputed and unsupported, the resulting registrations are subject to being declared void ab initio.

The record further reflects that, at the time of Defendants' applications, the FIREHOUSE mark was not exclusively owned. Contemporaneous third-party FIREHOUSE marks, including U.S. Registration No. 1,903,135 with Dalmatian Dog for restaurant services, and evidence of Defendants' awareness of such uses, confirm that Defendants' asserted entitlement to exclusive rights is disputed and inconsistent with the historical record.

Because federal trademark rights derive from lawful ownership, a party cannot obtain or enforce exclusive rights through registrations that lack a valid ownership foundation. If Defendants are not the lawful owners of the FIREHOUSE mark, their registrations cannot confer enforceable rights.

Defendants' franchise and licensing system depends upon asserted ownership of the FIREHOUSE marks. It is a fundamental principle of trademark law that a party cannot license rights it does not own. Accordingly, where ownership is disputed and unsupported, any licensing structure premised upon such ownership is likewise subject to challenge.

Under 15 U.S.C. §1055, use of a mark by related parties inures to the benefit of the true owner and does not create independent ownership rights in the user. Thus, any use by Defendants or their franchisees cannot create rights superior to Plaintiff's prior common-law rights.

Because Defendants' trademark portfolio derives from a common asserted ownership of the FIREHOUSE mark, a determination that such ownership is invalid or unsupported renders the entire portfolio subject to cancellation under 15 U.S.C. §1119.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff William Harris Rogers, Jr. respectfully requests that this Court enter judgment in his favor and grant the following relief:

A. Declaring that Plaintiff possesses prior and superior common-law trademark rights in the FIREHOUSE mark, including rights arising from the creation, development, and commercialization of the FIREHOUSE brand franchise concept;

B. Declaring that Defendants' claimed ownership of the FIREHOUSE-formative marks is invalid, unenforceable, and contrary to law;

C. Declaring that the FIREHOUSE-formative trademark registrations identified in this Complaint were procured and/or maintained based on disputed representations

concerning ownership and entitlement when filing to the United States Patent and Trademark Office;

D. Ordering, pursuant to 15 U.S.C. § 1119, cancellation of all FIREHOUSE-formative trademark registrations identified herein, together with any related, derivative, assigned, pledged, or subsequently issued registrations that trace back to the same underlying representation of ownership;

E. Declaring that such registrations are void ab initio to the extent they were procured or maintained based on disputed representations regarding ownership and entitlement to register;

F. Directing the United States Patent and Trademark Office to rectify the trademark register consistent with the Court's declarations and orders;

G. Declaring that Defendants are not entitled to file, maintain, renew, or enforce FIREHOUSE-formative trademark applications or registrations where such actions rely upon the same foundational ownership representations challenged herein;

H. Declaring that Defendants' continued prosecution, renewal, maintenance, licensing, or enforcement of FIREHOUSE-formative trademark rights, where based upon the same underlying ownership assertions, is improper and subject to cancellation under 15 U.S.C. § 1119;

I. Declaring that Defendants' use of the FIREHOUSE marks in commerce, including through franchise licensing and operations within the State of Georgia, is not exclusive to Defendants and is subject to Plaintiff's prior common-law rights;

J. Awarding Plaintiff his costs of this action and granting such other and further relief as the Court deems just, proper, and equitable under the circumstances.

K. Declaring that the FIREHOUSE trademark portfolio, as treated by Defendants as a unified and collateralized intellectual-property asset, is subject to portfolio-wide cancellation where the foundational representation of ownership is determined to be invalid or unsupported.

L. Declaring that Defendants' asserted ownership of the FIREHOUSE-formative marks, including as reflected in assignment and collateralization instruments, is disputed and does not support enforceable rights in any single registration or the portfolio as a whole.

M. Granting such further relief as may be necessary to effectuate the cancellation and correction of the trademark register in accordance with the Court's findings.

Respectfully submitted this 24th day of March 2026.

William H. Rogers, Jr.  Plaintiff, Pro Se
215 Rockhouse Road
Senoia, GA 30276
Phone: 828-817-4406
Email: billyrogersemail@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of March, 2026, I caused a true and correct copy of the foregoing **Complaint for Declaratory Relief and Cancellation under 15 U.S.C. § 1119**, together with all exhibits and attachments, to be served upon the Defendants by arranging for service of process pursuant to Rule 4 of the Federal Rules of Civil Procedure.    Service will be affected by a duly authorized process server upon the Defendants' registered agents as follows:

**Firehouse of America, LLC**
c/o C T Corporation System
(Registered Agent)
289 S Culver Street
Lawrenceville, GA 30046

**Firehouse Restaurant Group, LLC**
c/o C T Corporation System
(Registered Agent)
289 S Culver Street
Lawrenceville, GA 30046

**FRG, LLC**
c/o C T Corporation System
(Registered Agent)
1200 South Pine Island Road
Plantation, FL 33324

I further certify that proof of service will be filed with the Court upon completion of service.

Respectfully submitted this 24th day of March 2026.

William H. Rogers, Jr. Plaintiff, Pro Se
215 Rockhouse Road
Senoia, GA 30276
Phone: 828-817-4406
Email: billyrogersemail@gmail.com